SENIOR JUSTICE MILLETTE, concurring.
 

 I agree with the majority's analysis concluding that Johnson is not entitled to a neuropsychologist under
 
 Husske v. Commonwealth
 
 ,
 
 252 Va. 203
 
 ,
 
 476 S.E.2d 920
 
 (1996). I write separately because I disagree with the majority's conclusion that "
 
 Miller
 
 [
 
 v. Alabama
 
 , 567 U.S. ----,
 
 132 S.Ct. 2455
 
 ,
 
 183 L.Ed.2d 407
 
 (2012) ] is inapplicable to the present case" because geriatric release "provides a meaningful opportunity for release akin to parole." While the majority applies existing Virginia precedent, I believe
 
 Miller
 
 and
 
 Montgomery v. Louisiana,
 
 577 U.S. ----,
 
 136 S.Ct. 718
 
 ,
 
 193 L.Ed.2d 599
 
 (2016), do not suggest but rather require that this Court reexamine our position. However, because I conclude that Johnson's sentencing ultimately comported with
 
 Miller
 
 and
 
 Montgomery,
 
 and the trial court met its burden under the Eighth Amendment, I concur in the result.
 

 I.
 

 As an initial matter,
 
 Miller
 
 and
 
 Montgomery
 
 are not limited in scope to mandatory life sentences. Rather,
 
 Miller
 
 , as explicated in
 
 Montgomery
 
 , is the touchstone for constitutional sentencing of children potentially facing a sentence of life imprisonment without parole.
 

 In examining the scope of
 
 Miller
 
 and
 
 Montgomery
 
 , it is necessary to take two short steps back in the jurisprudence of the Supreme Court of the United States. In
 
 Roper v. Simmons
 
 ,
 
 543 U.S. 551
 
 , 575,
 
 125 S.Ct. 1183
 
 ,
 
 161 L.Ed.2d 1
 
 (2005), the Supreme Court found the death sentence to be a disproportionate punishment, and therefore cruel and unusual for juveniles for Eighth Amendment purposes. In
 
 Graham v. Florida
 
 ,
 
 560 U.S. 48
 
 , 74, 75,
 
 130 S.Ct. 2011
 
 ,
 
 176 L.Ed.2d 825
 
 (2010), the Supreme Court issued a blanket ban on the imposition of a sentence of life without parole for juvenile nonhomicide offenders, in part because the penalty of life without parole "forswears altogether the rehabilitative ideal." These two cases would ultimately form the bedrock of the holdings reached in
 
 Miller
 
 and
 
 Montgomery
 
 .
 

 Two years later,
 
 Miller
 
 arose in the context of a challenge to mandatory life without parole for a juvenile homicide offender. In
 
 Miller
 
 , the Supreme Court did "not categorically bar a penalty for a class of offenders or type of crime-as, for example, [the Court] did in
 
 Roper
 
 or
 
 Graham
 
 . Instead, it mandates only that a sentencer follow a certain process-considering an offender's youth and attendant characteristics-before imposing a particular penalty." 567 U.S. at ----,
 
 132 S.Ct. at 2471
 
 . Such a process is required, in short, because "children are constitutionally different from adults for the purposes of sentencing."
 

 Id.
 

 at ----,
 
 132 S.Ct. at
 
 2464 (citing
 
 Roper
 
 ,
 
 543 U.S. at 569-70
 
 ,
 
 125 S.Ct. 1183
 
 and
 
 Graham
 
 ,
 
 560 U.S. at 68
 
 ,
 
 130 S.Ct. 2011
 
 ). The Court held not that a life sentence without parole was
 
 never
 
 appropriate for a juvenile, but rather that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles."
 

 Id.
 

 at ----,
 
 132 S.Ct. at 2475
 
 . Accordingly,
 
 Miller
 
 held mandatory life sentences for juvenile offenders to be unconstitutional, and mandated that a process be followed considering the "offender's youth and attendant characteristics" before sentencing juveniles to life without parole.
 

 Id.
 

 at ----,
 
 132 S.Ct. at 2471
 
 .
 

 Courts initially struggled with the interaction of
 
 Miller's
 
 substantive and procedural components, resulting in the subsequent opinion of
 
 Montgomery
 
 , which plainly states
 
 Miller's
 
 key substantive and procedural holdings.
 
 Montgomery
 
 clarified that
 
 Miller
 
 set forth the following substantive rule of law:
 

 Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects "unfortunate yet transient immaturity." Because
 
 Miller
 
 determined that sentencing a child to life without parole is excessive for all but "the rare juvenile offender whose crime reflects irreparable corruption," it rendered life without
 parole an unconstitutional penalty for "a class of defendants because of their status"-that is, juvenile offenders whose crimes reflect the transient immaturity of youth.
 

 577 U.S. at ----,
 
 136 S. Ct. at 734
 
 (citations and internal quotation marks omitted).
 
 Montgomery
 
 also emphasized
 
 Miller
 
 's parallel, prospective procedural holding: "
 
 Miller
 
 requires a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence."
 

 Id.
 

 While
 
 Miller
 
 rendered mandatory sentences of life without parole facially unconstitutional, its impact was not limited to mandatory sentences.
 
 Miller's
 
 facial holding that mandatory life sentences without parole were unconstitutional was required by the dual central holdings clarified in
 
 Montgomery
 
 : that life without parole is a violation of the Eighth Amendment for "juvenile offenders whose crimes reflect the transient immaturity of youth," and, that "
 
 Miller
 
 requires a sentencer to consider a juvenile offender's youth and its attendant characteristics" before rendering a sentence of life without parole.
 
 Montgomery
 
 , 577 U.S. at ----,
 
 136 S.Ct. at 734
 
 . Because mandatory sentences do not allow for such consideration, they "necessarily carr[y] a significant risk that a defendant-here, the vast majority of juvenile offenders-faces a punishment that the law cannot impose on him": that "a child whose crime reflects unfortunate yet transient immaturity" might receive life without parole.
 

 Id.
 

 (citations and internal quotation marks omitted).
 

 Yet a non-mandatory sentence of life without parole can still be unconstitutional as applied to a given defendant, if such a juvenile is sentenced to life without parole without consideration of "youth and its attendant characteristics."
 

 Id.
 

 ;
 
 United Sta
 

 tes v. Johnson
 
 , No. 3:08-cr-0010,
 
 2016 WL 3653753
 
 , at *5,
 
 2016 U.S. Dist. LEXIS 83459
 
 , at *5-6 (W.D.Va. June 28, 2016) ("[A]bsolutist statutes like those in
 
 Miller
 
 and
 
 Montgomery
 
 are facially unconstitutional. But a particular life sentence (even one stemming from a sentencing regime that permits a non-life sentence) would be unconstitutional as-applied if the sentence did not abide by the commands of
 
 Miller
 
 and
 
 Montgomery
 
 .").
 
 Montgomery
 
 is clear that, prospectively, "[a] hearing
 
 where youth and its attendant characteristics are considered as sentencing factors
 
 is necessary to separate those juveniles who may be sentenced to life without parole from those who may not. The hearing ... gives effect to
 
 Miller's
 
 substantive holding that life without parole is an excessive sentence for children whose crimes
 reflect transient immaturity."
 
 [1]
 

 Montgomery
 
 , 577 U.S. at ----,
 
 136 S.Ct. at 735
 
 (emphasis added) (citation and internal quotation marks omitted).
 

 The Supreme Court in
 
 Miller
 
 could have simply struck down mandatory life without parole as unconstitutional. Instead, it devoted the majority of its opinion and holding to the importance of this procedural consideration of youth. This procedural requirement is ineffectual if limited to only "mandatory" sentencing schemes.
 
 Montgomery
 
 clarifies that the substantive rule of law set forth in
 
 Miller
 
 is that life without parole-not mandatory life without parole, but "life without parole"-is "an unconstitutional penalty for ... juvenile offenders whose crimes reflect the transient immaturity of youth."
 

 Id.
 

 at ----,
 
 136 S.Ct. at 734
 
 .
 
 [2]
 
 Accordingly,
 
 Montgomery
 
 also makes clear that a
 
 Miller
 
 hearing procedurally requires not just discretion to enter a lesser sentence, but
 
 actual
 
 consideration of youth by the sentencer,
 

 id.,
 

 or the entire portion of the opinion and holding in
 
 Miller
 
 addressing procedure would be rendered superfluous.
 

 II.
 

 Of course, none of the foregoing observations are consequential if Johnson received a
 sentence that provides, through parole or a similar system, a meaningful opportunity for release based on maturation and rehabilitation. The majority, observing that
 
 Miller
 
 and
 
 Montgomery
 
 do not apply in instances of parole, relies on our previous decision in
 
 Angel v. Commonwealth
 
 ,
 
 281 Va. 248
 
 , 275,
 
 704 S.E.2d 386
 
 , 402 (2011), for the proposition that geriatric release is "akin to parole."
 

 The Commonwealth abolished parole two decades ago. Code § 53.1-165.1. Non-capital juvenile homicide offenders in Virginia remain eligible to apply for geriatric release at the age of 60. Code § 53.1-40.01. Five years ago, in light of
 
 Graham
 
 , this Court was first tasked with examining whether those juvenile nonhomicide
 offenders eligible for geriatric release fell under
 
 Graham's
 
 prohibition against life imprisonment without parole, or rather had a "meaningful opportunity" for release.
 
 Graham
 
 ,
 
 560 U.S. at 75
 
 ,
 
 130 S.Ct. 2011
 
 .
 

 At the time, I joined this Court's opinion in
 
 Angel
 
 ,
 
 281 Va. at 275
 
 ,
 
 704 S.E.2d at 402
 
 , concluding that nonhomicide offenders in Virginia were not subject to life without parole under
 
 Graham
 
 because geriatric release offered a "meaningful opportunity" for release, thereby preventing those life sentences from implicating the Eighth Amendment concerns raised by
 
 Graham
 
 .
 

 Our mandate in light of
 
 Graham
 
 alone was substantially narrower than the vision of the Eighth Amendment set forth by the Supreme Court today.
 
 Graham
 
 noted, for example, that:
 

 It bears emphasis ... that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.
 

 560 U.S. at 75
 
 ,
 
 130 S.Ct. 2011
 
 . Additionally, the caveat that meaningful opportunity for release be "based on demonstrated maturity and rehabilitation," while present in
 
 Graham
 
 ,
 

 id.,
 

 was not emphasized as central to the holding in the case. The opinion went on to refer to "meaningful opportunity to obtain release" without caveat,
 

 id.
 

 at 79
 
 ,
 
 130 S.Ct. 2011
 
 , and, notably, the conclusion in
 
 Graham
 
 synthesized the holding as simply: "A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with
 
 some realistic opportunity to obtain release
 
 before the end of that term."
 

 Id.
 

 at 82
 
 ,
 
 130 S.Ct. 2011
 
 (emphasis added).
 

 Accordingly, in
 
 Angel
 
 this Court considered whether the Virginia geriatric release system was sufficiently distinguishable from life without parole as described in
 
 Graham
 
 , and concluded
 that it was; we found it offered a meaningful opportunity for release.
 
 281 Va. at 275
 
 ,
 
 704 S.E.2d at 402
 
 . While we also noted that normally applicable consideration procedures of the Parole Board would provide for meaningful release based on demonstrated maturity and rehabilitation, we devoted only two sentences to consideration of that issue.
 

 Id.
 

 Roper
 
 , a death penalty case, was unrelated to our analysis. I believe we made an informed decision based on the guidance provided to us from the Supreme Court at the time.
 

 I do not believe we sit in the same position today. We now must consider the issue in light of
 
 Roper
 
 ,
 
 Graham
 
 ,
 
 Miller
 
 , and
 
 Montgomery
 
 , and the clear indication by the Supreme Court of the United States that these cases are to be read together.
 
 Montgomery
 
 , 577 U.S. at ----,
 
 136 S.Ct. at
 
 734 ;
 
 Miller
 
 , 567 U.S. at ----,
 
 132 S.Ct. at 2461-69
 
 . As stated in
 
 Montgomery
 
 ,
 
 Graham
 
 was the "foundation stone" for
 
 Miller
 
 , and "
 
 Miller
 
 took as its starting premise the principle established in
 
 Roper
 
 and
 
 Graham
 
 that 'children are constitutionally different from adults for purposes of sentencing.' " 577 U.S. at ----,
 
 136 S.Ct. at 732-33
 
 . We must consider these holdings not as substantive rules unto themselves but parts of the larger, functioning understanding of the Eighth Amendment; as such, they cannot be understood in
 a vacuum, but must be read together to properly apply Eighth Amendment protections.
 

 Miller
 
 and
 
 Montgomery
 
 provide a more robust analytical framework for considering the issue of geriatric release.
 
 Graham's
 
 requirement of "meaningful opportunity for release
 
 based on demonstrated maturity and rehabilitation
 
 ,"
 
 560 U.S. at 75
 
 ,
 
 130 S.Ct. 2011
 
 (emphasis added), contains new meaning and import in light of the emphasis in
 
 Miller
 
 and
 
 Montgomery
 
 on the distinction between transient behavior and incorrigibility. Through the lens of
 
 Miller
 
 and
 
 Montgomery
 
 , it appears that the "meaningful" or "realistic" opportunity to obtain release referred to in
 
 Graham
 
 always contemplated meaningful release based on demonstrated maturity and rehabilitation.
 

 Geriatric release, as it currently exists in the Commonwealth, is fundamentally not a system that ensures review and release based on demonstrated maturity and rehabilitation. Virginia's traditional
 parole system
 
 [3]
 
 requires consideration of enumerated factors by the Parole Board. Code § 53.1-155 ; Virginia Parole Board, Policy Manual, Section I (2006), available at https://vpb.virginia.gov/files/1107/vpb-policy-manual.pdf (last visited Dec. 1, 2016). While maturity and rehabilitation are not factors which are enumerated verbatim, they are substantially present.
 
 See
 
 id.
 

 However, geriatric release applicants are required to cite compelling reasons for their release, and the Parole Board can deny the application for any reason upon Initial Review.
 
 [4]
 
 Virginia Parole Board Admin. Proc. 1.226.
 
 [5]
 
 No consideration of particular factors is required.
 

 Id.
 

 If geriatric release as implemented in Virginia carries no mandate to ensure a process for consideration of maturation or rehabilitation, it would appear to fail the test set forth in
 
 Graham
 
 that release be "based on demonstrated maturity and rehabilitation."
 
 560 U.S. at 75
 
 ,
 
 130 S.Ct. 2011
 
 .
 
 See also
 

 LeBlanc v. Mathena
 
 ,
 
 841 F.3d 256
 
 (4th Cir. 2016) (holding Virginia's geriatric release statute failed to provide a meaningful opportunity for release based on maturity and rehabilitation under
 
 Graham
 
 in accordance with the Eighth Amendment). In this regard, it is also manifest that geriatric release is not a meaningful opportunity for release that is "akin to parole."
 

 Additionally, following
 
 Miller
 
 and
 
 Montgomery
 
 , the issue of rarity is no longer a mere empirical observation; it is instead linked to a substantive element: "Although
 
 Miller
 
 did not foreclose a sentencer's ability to impose life without parole on a juvenile, the Court explained that a lifetime in prison is a disproportionate sentence for all but the rarest of children, those whose crimes reflect irreparable corruption."
 
 Montgomery
 
 , 577 U.S. at ----,
 
 136 S.Ct. at 726
 
 (citation and internal quotation marks omitted). Yet if geriatric release does not require consideration of irreparable corruption versus demonstrated maturity, or ensure that denial of release, and therefore life without parole, is indeed rare, then we
 cannot claim geriatric release serves as a basis for the validation of life without parole sentences without complying with the framework of
 
 Montgomery
 
 .
 

 In requiring that "sentencing courts consider a child's 'diminished culpability and heightened capacity for change' before condemning him to die in prison,"
 
 Graham
 
 ,
 
 Miller,
 
 and
 
 Montgomery
 
 now reflect an evident clarification of doctrine on the part of the Supreme Court of the United States to avoid condemning juveniles to life in prison without hope of parole due to the "transient immaturity of youth."
 
 Montgomery
 
 , 577 U.S. at ----, ----,
 
 136 S.Ct. at 726, 734
 
 . As
 
 Miller
 
 emphasizes, "removing youth from the balance ... contravenes
 
 Graham's
 
 (and also
 
 Roper's
 
 ) foundational principle: that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though
 they were not children." 567 U.S. at ----,
 
 132 S.Ct. at 2466
 
 . Yet geriatric release treats juveniles no differently than adults, and is if anything harsher due to the longer period of punishment the juvenile must serve before reaching the age of eligibility.
 

 In light of recent Supreme Court precedent, I believe that the juveniles sentenced to life in Virginia are no different than the juveniles sentenced to "life imprisonment without parole" described in
 
 Graham
 
 ,
 
 Miller,
 
 and
 
 Montgomery
 
 , and that geriatric parole does not provide a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."
 
 Graham
 
 ,
 
 560 U.S. at 75
 
 ,
 
 130 S.Ct. 2011
 
 . As a result, juveniles sentenced to life in Virginia are in fact facing "the harshest possible penalty for juveniles,"
 
 Miller
 
 , 567 U.S. at ----,
 
 132 S.Ct. at 2475
 
 , regardless of whether we choose to invoke the phrase "life without parole." Accordingly, they should be protected by the substantive and, at least prospectively, procedural rules of law clarified in
 
 Montgomery
 
 .
 
 [6]
 

 III.
 

 In the case at bar, the record reflects that the trial court considered peer-reviewed journals presented by the defendant
 concerning adolescent brain development and legal culpability, thereby considering "youth and its attendant characteristics" before rendering its sentence.
 
 Montgomery
 
 , 577 U.S. at ----,
 
 136 S.Ct. at 735
 
 . Because I believe the trial court satisfied the constitutional requirements articulated in
 
 Miller
 
 and
 
 Montgomery
 
 , I concur in the majority's opinion affirming Johnson's sentence.
 

 Retroactively,
 
 Montgomery
 
 allows for reviews after a term of years to satisfy this requirement without disturbing finality. 577 U.S. at ----,
 
 136 S.Ct. at 736
 
 .
 

 The Supreme Court's recent action bolsters this view.
 
 Arias v. Arizona
 
 , --- U.S. ----,
 
 137 S.Ct. 370
 
 , --- L.Ed.2d ---- (2016) (vacating and remanding a judgment predicated upon the refusal of the Court of Appeals of Arizona to grant
 
 Miller
 
 relief to a juvenile who did not receive a mandatory life sentence).
 

 Traditional parole, while still operational, applies to sentences rendered in prosecutions for crimes that were committed prior to January 1, 1995. Code § 53.1-165.1.
 

 Applications that proceed past the Initial Review stage to the Assessment Review stage receive consideration under the same factors as those eligible for traditional parole. Virginia Parole Board Admin. Proc. 1.226.
 

 As of December 1, 2016, the Virginia Parole Board Administrative Procedure Manual was available at https://vpb.virginia.gov/files/1108/vpb-procedure-manual.pdf.
 

 As stated in
 
 Montgomery
 
 , I do not believe this disturbs the finality of sentences: rather, retroactively, the Commonwealth must ensure that the geriatric release procedures are modified or another review is put in place for juveniles after a term of years that comports with the requirements set forth in
 
 Graham
 
 ,
 
 Miller
 
 , and
 
 Montgomery
 
 .